919 A.2d 136 (2007)
391 N.J. Super. 542
STATE of New Jersey, Plaintiff-Appellant,
v.
Alvin McCANN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 2007.
Decided March 23, 2007.
Joshua M. Ottenberg, Acting Camden County Prosecutor, for appellant (Lauren E. Pratter, Special Deputy Attorney General, Acting Assistant Prosecutor, on the brief).
Thomas J. Gossé, Haddon Heights, for respondent.
Before Judges KESTIN, WEISSBARD and GRAVES.
The opinion of the court was delivered by
WEISSBARD, J.A.D.
Pursuant to leave granted, plaintiff, State of New Jersey, appeals from an order suppressing narcotics and related paraphernalia from use as evidence in a prosecution of defendant, Alvin McCann. The motion judge ruled that the Municipal Court judge who issued the search warrant that resulted in seizure of the evidence *137 was not a "neutral and detached magistrate" because he had previously represented defendant as his attorney. This issue has never been addressed in any New Jersey decision. For the reasons which follow, we agree with the motion judge that the Municipal Court judge should not have acted on this warrant application but, contrary to his ruling, conclude that suppression is not the appropriate remedy in the circumstances presented.
The facts are as follows. On April 20, 2005, Officer John Grisso of the Winslow Township Police Department sought a search warrant for the residence of defendant at 201 Fifteenth Street, Florence, Winslow Township. In support of his application, Grisso submitted an affidavit which detailed an investigation beginning with information from a confidential informant in January 2005, concerning sales of narcotics by a man identified as "Ron" from 201 Fifteenth Street. Thereafter, Grisso conducted surveillance of the premises and arranged for the informant to make a controlled buy of cocaine from "Ron" at that address. In March, and again in mid-April 2005, Grisso arranged for another informant to buy cocaine from "Ron." These buys were observed by Grisso and the purchases were confirmed to be cocaine. We have only briefly sketched the contents of Grisso's affidavit because it clearly established probable cause to search the designated premises and defendant does not contend otherwise.
Grisso's affidavit was presented to the judge of the Municipal Court of Winslow Township. The search warrant was issued by the judge on the date of application, April 20, 2005, and was executed on the following day.
Following his indictment on various drug offenses, defendant moved to suppress the evidence seized pursuant to the warrant, arguing that the municipal judge was not the constitutionally required "neutral and detached magistrate," Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948), due to a long-standing attorney-client relationship between the judge and defendant. In support of that argument, defendant testified at the suppression hearing[1] that he had known the Municipal Court judge for twenty or thirty years, had consulted with him on various legal matters, and had been represented by him in one litigated case about ten years earlier. Defendant considered the judge his "family attorney." In his decision, the judge summarized defendant's proofs as follows:
The unrebutted testimony, and for purposes of this motion, I accept Mr. McCann's testimony as being credible. The unrebutted testimony is that Mr. McCann enjoyed a long term relationship with [the judge] beginning before [the judge] was appointed to the Municipal Court bench.
He had been represented by him. His two sisters had been represented by him. His mother had been represented by him. He had been to his house on at least 12 occasions. He has sought his counsel on at least ten occasions. He had worked with him as part of his function with Winslow Township as an inspector. And he was so comfortable with him that he was able to approach him three weeks before the issuance of this search warrant and request an OR bail for a friend.
*138 As a result, the judge found that "there was a relationship between the defendant and [the Municipal Court judge] as to make [the judge] not a neutral and detached magistrate." Turning to the appropriate remedy, the judge ruled:
Now we get to the question as to what would be the appropriate remedy, which was really the focal point of the arguments today. Defendant argues that the search warrant is invalid and that the exclusionary rule demands the suppression of the evidence that was seized. The state argues that an appropriate remedy is for this Court to review the search warrant to determine whether or not probable cause exists and that the evidence would have been discovered in any event.
I believe that probable cause does exist in this case. There is an extraordinary amount of cause that is set forth in the affidavit. The starting point, I guess, as set forth is the Constitution which requires that  our Constitution and the United States Constitution and the New Jersey Constitution require that probable cause be shown to a neutral and detached magistrate upon affiant's swearing an oath in front of that magistrate or judge.
The purpose of that, according to . . . Mapp v. Ohio, 367 U.S. 643, [81 S.Ct. 1684, 6 L.Ed.2d 1081, (1961)] the purpose of the exclusionary rule is to deter police misconduct. In the Eleuteri case, [Eleuteri v. Richman, 26 N.J. 506, 141 A.2d 46 (1958)], Chief Justice Weintraub talks about adopting the exclusionary rule in New Jersey and purposes, the pros and the cons in doing that, and he sets . . . forth that the two reasons New Jersey should adopt it, one, . . . that the state should not stoop to the dirty business that criminals participate in in order to catch a criminal, and secondly that there is no civil or criminal remedy when the process is violated that would restore or protect the individual.
Here there was no wrongdoing by the police officer. He did exactly what he should have done. He gathered the evidence. He brought it before the Municipal Court Judge. He attested to it, and it was sufficient in that Judge's mind, and I think appropriately sufficient, to justify the issuance of the search warrant.
The question then turns to whether or not if the Municipal Court Judge made an error what the remedy should be. And as I found that he had a relationship that . . . made him less than detached and neutral, that is the focus of this particular inquiry. There are no cases that are precisely on point.
The defendant cites State v. Bobo at 222 N.J.Super. 30[, 535 A.2d 983 (App. Div.1987)] as justification to exclude the evidence. In that case, the error was two-fold. One, that the police officer took the complaint . . . unattested to and brought it to the deputy court clerk who then signed the search warrant. So, you have a failure to adhere to the process of the affiant being in front of the judicial officer and that the affidavit be sworn to, but you also had the judicial officer issuing the search warrant inappropriately because the process had not been complied with.
The remedy there  interestingly it's a case that comes out of the Appellate Division but originally rose out of Camden County. In that case, the Court suppressed the evidence and asserted the exclusionary rule. The error there was one that included the error of the judicial officer reviewing the search warrant complaint. The same result was in the case cited today verbally during oral argument, Connally v. Georgia, 429 U.S. *139 245, [97 S.Ct. 546, 50 L.Ed.2d 444,] a 1977 case where the United States Supreme Court indicated that the appropriate result when there was not a neutral and detached Judge, in that case as cited earlier, the Judge's compensation was affected by . . . whether or not he issued the search warrant, getting I think it was $5 per search warrant.
All of this leads me to believe that in New Jersey the appropriate remedy is to implement the exclusionary rule when there's been an error in the issuance of the search warrant. Good faith is not a defense whether it be for an investigating police officer or the issuing Judge, according to the cases I've just cited.
Accordingly, defendant's motion is granted.
The "neutral and detached magistrate" requirement as a part of the Fourth Amendment warrant guarantee was first explicitly stated in Johnson v. United States, supra, which itself did not discuss the contours of the concept but focused on the need for a warrant in searching a private residence. Subsequently, in the oft-cited case of Wong Sun v. United States, 371 U.S. 471, 481-82, 83 S.Ct. 407, 414, 9 L.Ed.2d 441, 451 (1963), the Supreme Court spoke of the need for "the deliberate, impartial judgment of a judicial officer [to] be interposed between the citizen and the police." As a noted commentator has said, referring to Johnson, it appears "that a significant part of the protection which flows from the warrant process stems from the fact that the critical probable cause decision is being made, albeit ex parte, by a person possessing certain attributes and acting in a certain way." 2 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 4.2 at 438 (3d ed. 1996). Our courts have adopted this fundamental tenet of Fourth Amendment law as part of the parallel guarantee of our State Constitution. State v. Ruotolo, 52 N.J. 508, 511, 247 A.2d 1 (1968); State v. Bobo, 222 N.J.Super. 30, 34, 535 A.2d 983 (App.Div. 1987). Both of those cases, however, concerned warrants that were claimed to have been issued by an individual not properly authorized to do so. In Ruotolo, the Court held that a deputy clerk of a municipal court was authorized to sign an arrest warrant, while Bobo held that an arrest warrant was not properly issued because the complainant/officer did not sign the warrant in the presence of the deputy court clerk. Thus, neither case provides any guidance in the matter under review.
The Supreme Court has addressed the neutral and detached magistrate requirement in a number of cases. In Coolidge v. New Hampshire, 403 U.S. 443, 453, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564, 575 (1971), the Court held that a search warrant issued by a state attorney general acting as a justice of the peace was invalid because the warrant concerned an investigation being conducted by the attorney general in his law enforcement capacity. As a result, the evidence seized under the warrant was suppressed. In Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), a town justice issued an open-ended search warrant for obscene material and then accompanied the police officers to the place of the search and participated in the execution of the warrant by making on-the-scene determinations of obscenity. In doing so, the judge "was not acting as a judicial officer but as an adjunct law enforcement officer." Id. at 327, 99 S.Ct. at 2325, 60 L.Ed.2d at 929. Again, the evidence in question was suppressed. Finally, in Connally v. Georgia, 429 U.S. 245, 251, 97 S.Ct. 546, 549, 50 L.Ed.2d 444, 449 (1977), relied on by the motion judge here, the Court invalidated a search warrant issued by an unsalaried justice of the peace who received a fee for *140 each warrant issued but no fee for reviewing and denying a search warrant application. Because of the judge's personal and substantial financial interest in the decision whether to issue a warrant, the judge did not possess the required neutrality, resulting in suppression of the evidence. As is readily apparent, none of these decisions has any bearing on the issue before us.
Only a few cases in other jurisdictions have considered whether the judge's prior acquaintance with the defendant was a basis for invalidating a search warrant. In State v. Mandravelis, 114 N.H. 634, 325 A.2d 794 (1974), the magistrate who issued the warrant had, before becoming a judge, "represented the defendant on several criminal charges, some of which resulted in convictions and sentences to jail, and also had knowledge that the defendant had had problems with drugs when younger. . . ." Id. at 795. The court found no parallel to Coolidge, supra, and found, further, "that the defendant failed to show that the issuing magistrate was in fact prejudiced against him by reason of the prior association." Ibid. Accordingly, it upheld the validity of the search warrant. In the present case, as well, there is no indication that the Municipal Court judge was prejudiced against defendant as a result of their prior relationship and defendant makes no such claim. Indeed, if anything, it would seem that if the judge was cognizant that the warrant was directed at his former client, he might have been predisposed in defendant's favor. Accepting defendant's testimony, there is no suggestion that the judge was aware of any facts, from his relationship with defendant or his family, that defendant was involved in narcotics activity.
In United States v. Heffington, 952 F.2d 275 (9th Cir.1991), the judge who issued a search warrant for the home of one defendant's step-father had represented, while serving as a federal defender, one of the co-defendants in another drug case involving two of the other co-defendants. Id. at 277-78. There, as here, defendant claimed a lack of neutrality on the part of the judge. Reviewing Coolidge, Lo-Ji, and Connally, the court found no support for defendant's argument. Id. at 278. However, defendant also argued that the court should look to the federal recusal statutes, 28 U.S.C.A. § 144, § 455, as a basis for finding a lack of neutrality on the part of the judge. Ibid. While rejecting defendant's argument based on the "government employment" provision of § 455(b), id. at 278-79, the court did note a potentially more troublesome argument that the judge "might have received confidential information from [his former client] about [defendant's] manufacturing efforts with [the other co-defendants] so that he had `personal knowledge' of evidentiary facts" that would bear upon or influence his decision to issue the warrant. Id. at 279. The court rejected this argument, however, because defendant "never offered to tell the trial court or this court what confidential information he thought [the judge] had acquired in connection with the previous case, or how it would shed light on [the police officer's] affidavit, which clearly stood on its own facts." Ibid. As noted above, the same observations apply here, where the judge had never represented defendant in any criminal matters and there is no suggestion that he had received confidential information from defendant relating to the subject of the warrant application.
Nevertheless, the Heffington court also considered defendant's argument that there was an appearance of partiality resulting from the judge's prior representation of the co-defendant. Assuming such an appearance, the court found that it was clearly "not so `extreme' that it constitutes *141 a constitutional violation." Ibid. In reaching that conclusion, the court took note of civil cases demonstrating "a measure of caution on the part of the courts before concluding that mere appearances of partiality have, in fact, risen to the level of constitutional error." Ibid. (citations omitted). The court went on to conclude as follows:
Perhaps because the cases fail to provide bright-line criteria for determining whether an "appearance" has, in fact, developed into a constitutional defect, the trial court understandably was inclined toward attempting to resolve this question by determining whether or not the concept of "harmless error" applied. The trial court applied the harmless error analysis to appellant's neutral and detached magistrate claim because from all the facts before the court it was clear that any magistrate would have found probable cause for a warrant. In its written order denying [defendant]'s motion to suppress, the district court observed that "this is not a situation where the magistrate was presented with a bare-bones affidavit making it arguably probable that the search warrant was issued solely because of the magistrate's knowledge of the details of that previous prosecution."
Although [the judge] may not have been the best possible "neutral and detached" magistrate in Central California to issue the search warrant, we find no constitutional defect in the warrant he issued.
[Id. at 279-80.]
Professor LaFave notes his agreement with Heffington and Mandravelis. 2 LaFave, supra, § 4.2(b) at 444.
Our governing Canons also guard against the appearance of partiality on the part of judges. Canon 2 of the Code of Judicial Conduct provides, in pertinent part, that a judge "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The Commentary to the Canon explains that a "judge must avoid all impropriety and appearance of impropriety. . . ." Further, Rule 1:12-1 incorporates the provisions of N.J.S.A. 2A:15-49 which require a judge's disqualification in certain actions, including where the judge has been "attorney of record or counsel for a party" to the action pending before the judge. However, the Rule goes further than the statute and requires disqualification "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which reasonably might lead counsel or the parties to believe so."[2] Our case law has applied this Rule consistently and vigorously in a number of factual scenarios.
In State v. Deutsch, 34 N.J. 190, 168 A.2d 12 (1961), the judge was the brother of the County Prosecutor. The assistant prosecutor assigned to defendant's case was a partner in a law firm in which the Prosecutor was also a partner. Id. at 205, 168 A.2d 12. The Court stated:
It is vital that justice be administered not only with a balance that is clear and true but also with such eminently fair procedures that the litigants and the public will always have confidence that it is being so administered. See Frankfurter, J. in Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954): "justice must satisfy the appearance of justice." To that end *142 judges must refrain from engaging in any conduct which may be hurtful to the judicial system or from sitting in any causes where their objectivity and impartiality may fairly be brought into question. While the earlier common law cases in England took a narrower approach, the more recent English decisions have suggested that where the circumstances are such as to create in the mind of a reasonable man a suspicion of bias there may well be a basis for disqualification though "in fact no bias exists." See Law v. Chartered Institute of Patent Agents, [1919] 2 Ch. 276, 289. Similarly in the United States there is a significant trend, stimulated by high-minded judicial expressions as well as broad constitutional and statutory provisions, towards recognition of a basis for disqualification where, in the eyes of the litigants and the public, the circumstances call justly for the judge's withdrawal.
[Id. at 206-07, 168 A.2d 12 (citations omitted).]
After reviewing a number of decisions from other jurisdictions, the Court continued:
Those who drafted and originally implemented the Judicial Article of our 1947 Constitution were well aware of the need for the maintenance of the purity of the judiciary and the avoidance of conduct which might tempt or undermine judicial objectivity and impartiality or impair and lessen the confidence of litigants and the public.
[Id. at 209, 168 A.2d 12.]
In the end, the Court directed that another judge hear the matter on remand and ordered the drafting of a comprehensive rule on disqualification. Id. at 211, 168 A.2d 12. The present rule appears to have been the result of that directive.
In State v. Horton, 199 N.J.Super. 368, 377, 489 A.2d 1164 (App.Div.1985), we concluded that a judge who had represented a criminal defendant in a prior criminal matter while in private practice should have recused himself under R. 1:12-1(f). In State v. Perez, 356 N.J.Super. 527, 531-33, 813 A.2d 597 (App.Div.2003), we reached the same result with respect to a judge whose comments reflected a bias against defendant's ethnic group. In State v. Tucker, 264 N.J.Super. 549, 553-55, 625 A.2d 34 (App.Div.1993), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994), we held that a judge who, as an assistant prosecutor, had presented several cases involving defendant to a grand jury should have recused himself. In the course of that decision, we stated:
A trial judge "not only has the right but, moreover, has the obligation to recuse himself on his own motion if he is satisfied that there is good cause for believing that his not doing so `might preclude a fair and unbiased hearing and judgment, or . . . might reasonably lead counsel or the parties to believe so.'" State v. Utsch, 184 N.J.Super. 575, 581, 446 A.2d 1236 (App.Div.1982) (quoting R. 1:12-1(f)); see also James v. State, 56 N.J.Super. 213, 217, 152 A.2d 386 (App.Div.1959). We have noted that "[n]ext in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." State v. Muraski, 6 N.J.Super. 36, 38, 69 A.2d 745 (App.Div. 1949), quoting 30 Am.Jur., Judges, para. 53.
[Id. at 554, 625 A.2d 34.]
In State v. Kettles, 345 N.J.Super. 466, 785 A.2d 925 (App.Div.2001), certif. denied, 171 N.J. 443, 794 A.2d 182 (2002), defendant's trial judge, while serving as an assistant prosecutor, had presented evidence concerning defendant to a grand jury, resulting *143 in his indictment. On defendant's petition for post-conviction relief, we held that the trial judge should have recused herself, notwithstanding her disclosure of her prior involvement with defendant, and his waiver of any objection to the judge presiding over his trial. Referring to Canon 3C of the Code of Judicial Conduct and R. 1:12-1, we held that while the judge's involvement did not fall within any of the enumerated circumstances in the Rule or Canon, id. at 470, 785 A.2d 925, "the fairness and integrity of the judgment is as important as the correctness of the judgment." Ibid. Finding the case factually indistinguishable from Tucker, supra, defendant's conviction was set aside.
Finally, in Rivers v. Cox-Rivers, 346 N.J.Super. 418, 788 A.2d 320 (App.Div. 2002), the wife in a matrimonial proceeding learned, following a plenary hearing, that the presiding judge had previously been a partner in a law firm that had represented her husband some fourteen years earlier, in the early stages of their marital difficulties. Id. at 420, 788 A.2d 320. The judge denied the wife's motion to vacate the order resulting from the hearing and for recusal. Id. at 420-21, 788 A.2d 320. We reversed, concluding that the circumstances required a "bright-line rule," non-waivable by the parties, precluding the judge's participation in these circumstances because of the need "to maintain public confidence in the judicial process, which in turn depends on a belief [by litigants and the general public alike] in the impartiality of judicial decisionmaking." Id. at 421, 788 A.2d 320 (quoting State v. Kettles, supra, 345 N.J.Super. at 469-70, 785 A.2d 925 (quoting United States v. Nobel, 696 F.2d 231, 235 (3d Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983))).
Federal recusal practice, while somewhat different, is also instructive. 28 U.S.C.A. § 144 provides:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
When a "timely affidavit is filed under section 144, its factual allegations must be accepted as true." United States v. Vespe, 868 F.2d 1328, 1340 (3d Cir.1989). If the facts, excluding "conclusory statements and opinions . . . `give fair support to the charge of a bent of mind that may prevent or impede nonpartiality of judgment,'" recusal is required. Ibid. (quoting United States v. Townsend, 478 F.2d 1072, 1073-74 (3d Cir.1973) (quoting Berger v. United States, 255 U.S. 22, 33-34, 41 S.Ct. 230, 233, 65 L.Ed. 481, 485 (1921))). Federal law also contains a disqualification statute similar to, but broader in scope than N.J.S.A. 2A:15-49. That statute provides, in pertinent part:
(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:

*144 (1) Where he has a personal bias or prejudice concerning a party. . . .
[28 U.S.C.A. § 455.]
Section 455(a) "concerns not only fairness to individual litigants, but, equally important, it concerns `the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993) (quoting In re Sch. Asbestos Litig., 977 F.2d 764, 776 (3d Cir.1992)). "To achieve its highest function, `"justice must satisfy the appearance of justice."'" Ibid. (quoting Sch. Asbestos Litig., supra, 977 F.2d at 782 (quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955))). Thus, section 455(a) parallels our governing Canon and Rule 1:12-1, discussed above.
Based on these precepts, we agree with the motion judge that the Municipal Court judge should have recused himself from this warrant application proceeding. We assume, as we must, that he carefully reviewed the Grisso affidavit that revealed defendant's involvement and that he knew or should have known that this was his former client. Under these circumstances, there was an appearance of impropriety under R. 1:12-1(f).[3] Nevertheless, in State v. Marshall, 148 N.J. 89, 279, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997), the Court made clear that while "the mere appearance of bias may require disqualification" pursuant to R. 1:12-1(f), "the belief that the proceedings were unfair must be objectively reasonable." Tested by that standard, we conclude that the appearance of partiality was objectively reasonable in this situation.
Having concluded that the Municipal Court judge should not have participated in the application proceeding, we come to the question of remedy. While we generally agree with the thoughtful opinion of the motion judge, we conclude that suppression is not appropriate in this case. Here, defendant makes no assertion of bias on the part of the judge who signed the warrant and the facts concerning the prior relationship suggest none.[4] More importantly, as we have noted, no case until today has expressly condemned the practice in question, which likely occurs only infrequently. As a result, our ruling shall be purely prospective. See State v. Knight, 145 N.J. 233, 249, 678 A.2d 642 (1996) (citing State v. Burstein, 85 N.J. 394, 402-03, 427 A.2d 525 (1981)).
In the future, if a defendant makes a particularized and credible assertion of facts that objectively suggest an appearance of partiality on the part of the judge issuing a search warrant, based on a prior *145 relationship or otherwise, a "bright-line" rule invalidating the search warrant will be applicable. The test is similar to that used in judging whether recusal is warranted under the principles discussed earlier. We ask whether, if defendant were a party to the warrant application, would he be entitled to recusal of the judge. If so, then the warrant proceeding "is a nullity." Cox-Rivers, supra, 346 N.J.Super. at 421, 788 A.2d 320.
The need for such a remedy reflects the central place of the neutral and detached magistrate requirement in our state and federal search and seizure guarantees. As the motion judge aptly said, "Good faith is not a defense whether it be for an investigating police officer or the issuing Judge. . . ." See State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987). Judges at all levels, particularly municipal court judges who maintain private practices, must be sensitive to the concerns discussed herein lest their inaction result in the suppression of probative evidence.
Reversed.
NOTES
[1] Defendant had submitted a certification to the motion judge but the judge felt that additional testimony was needed.
[2] In Ferren v. City of Sea Isle City, 243 N.J.Super. 522, 526, 580 A.2d 737 (App.Div.1990), we noted that the court rule preempts the legislation in light of the Court's constitutional authority over the administration of the courts. See Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406, cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
[3] We note that an argument could be made that the judge had been counsel for a "party" to the proceeding, N.J.S.A. 2A:15-49b, in the sense that defendant was a "party" to this ex parte application for a search of his residence. We need not address that issue, however, in light of State v. Horton, supra, 199 N.J.Super. at 376-77, 489 A.2d 1164, in which we concluded that under Winberry principles, the less restrictive court rule applies. Rule 1:1-2-1(c) requires that the judge have "been attorney of record or counsel in the action" (emphasis supplied), meaning the action under review.
[4] Our ruling should not be read as adopting a harmless error analysis, as urged by the State. We reject such an approach as unworkable. A harmless error inquiry would presumably require evaluation of the strength of the warrant application, as well as whether the issuing judge was favorably inclined toward the defendant or biased against him as a result of the prior relationship, a finding that could only be made by taking testimony from the judge. We view these inquiries as problematic at best.