950 A.2d 930 (2008)
401 N.J. Super. 331
STATE of New Jersey, Plaintiff-Respondent,
v.
Anthony GIOE and Frank Caruso, Jr.,[1] Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 2007.
Decided July 2, 2008.
*932 Steven E. Nelson argued the cause for appellant (Nelson, Fromer & Crocco, attorneys; Mr. Nelson, on the brief).
Thomas M. Cannavo, Assistant Prosecutor, argued the cause for respondent (Marlene Lynch Ford, Ocean County Prosecutor, attorney; Patricia Toreki, Assistant Prosecutor, on the brief).
Before Judges PARRILLO, GRAVES, and ALVAREZ.
The opinion of the court was delivered by
GRAVES, J.A.D.
A three-count indictment charged defendants Anthony Gioe and Frank Caruso, Jr. with second-degree possession with intent to distribute marijuana in a quantity of more than five pounds but less than twenty-five pounds, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(10)(b) (count two), and fourth-degree possession of more than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(3) (count three). In count one, Caruso was charged with second-degree possession of a gravity knife for an unlawful purpose while in the course of committing, attempting to commit, or conspiring to commit a narcotics offense, N.J.S.A. 2C:39-4.1(c).
Following the denial of his motion to suppress, defendant pled guilty to count two, second-degree possession with intent to distribute marijuana. In his plea agreement, defendant reserved the right to appeal *933 the denial of his motion to suppress.[2] On September 15, 2006, defendant was sentenced to a five-year state prison term on count two and count three was dismissed. Defendant's sentence was stayed pending the outcome of this appeal.
On appeal, defendant presents the following arguments:
POINT I
BECAUSE THE WARRANT WAS ISSUED BY A MUNICIPAL COURT JUDGE WITHOUT THE PHYSICAL PRESENCE AND SWORN TESTIMONY OF THE APPLICANT AND BECAUSE THE WARRANT WAS ISSUED ON UNSWORN EVIDENCE INSUFFICIENT TO ESTABLISH PROBABLE CAUSE, THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS.
A. IN REVIEWING A LAW DIVISION DECISION OF A MOTION TO SUPPRESS EVIDENCE, THE APPELLATE DIVISION AFFORDS NO DEFERENCE TO LEGAL CONCLUSIONS MADE BY THE LAW DIVISION.
B. THE WARRANT IS INVALID BECAUSE IT WAS ISSUED BY A MUNICIPAL COURT JUDGE WITHOUT THE PHYSICAL PRESENCE AND SWORN TESTIMONY OF THE APPLICANT.
C. SINCE THE "AFFIDAVIT" CONSIDERED BY THE JUDGE IS NOT, IN ACTUALITY, AN AFFIDAVIT, IT IS INDISPUTABLE THAT THE WARRANT WAS ISSUED ON UNSWORN EVIDENCE INSUFFICIENT TO ESTABLISH PROBABLE CAUSE.
POINT II
FAILURE TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF R. 3:5-3(b) RENDERS THE SEARCH WARRANT INVALID.
After considering these contentions in light of the record, the applicable law, and the arguments of counsel, we affirm.
The relevant facts can be summarized as follows. During the week of August 7, 2005, Investigator Scott Moeller, a Dover Township police officer assigned to the Ocean County Narcotics Strike Force (OCNSF), was contacted by a reliable confidential informant whose assistance "led to the arrest of seven individuals for CDS violations and the seizure of quantities of PCP and marijuana." The informant told Investigator Moeller that Anthony Gioe of Toms River was "planning to purchase a large quantity of marijuana from his source of supply in Monmouth County and would be returning to the Ocean County area to distribute same." The informant described the vehicle defendant would be using as a red Oldsmobile Ciera, and also stated "an individual known to him/her only as Frank, a [white male] being approximately 19 years old, 5'9" tall, weighing 170 pounds with short, dark hair, would be receiving a quantity of this marijuana from Gioe."
Based on this information, Moeller and other members of the OCNSF initiated surveillance of defendant's residence. At approximately 8:00 p.m. on August 11, 2005, Moeller observed defendant exit his residence and drive off in a red Oldsmobile Ciera, which Moeller determined from the Division of Motor Vehicles was registered to Anthony Gioe. Defendant drove to a location in Toms River, where he picked *934 up an individual carrying a white plastic bag, who matched the informant's description of "Frank," and then drove back to his residence. Both defendant and Frank entered defendant's house with the white plastic bag. "Minutes later," the two exited defendant's residence and defendant placed the white plastic bag in the trunk of his car.
Moeller followed the vehicle to a residential area in Tinton Falls, and, approximately one-half hour later, observed defendant's vehicle leaving the area and traveling southbound on the Garden State Parkway. Moeller contacted the Dover Township Police Department (DTPD) and requested a motor vehicle stop, which occurred at approximately 11:05 p.m. Defendant and Frank Caruso, who Moeller knew "through prior police contact" as a distributor of controlled dangerous substances (CDS) in the Toms River area, were removed from the vehicle and patted down. During the pat-down of Caruso, police found a "metal folding knife" in his right front pocket, and he was placed under arrest for unlawful possession of a knife. A search incident to arrest yielded an undisclosed amount of marijuana and $1515 on Caruso's person. Additionally, a "sniff" test performed by a K-9 detection unit was positive for the presence of CDS in the trunk area of defendant's car. Defendant and Caruso were then transported to DTPD headquarters, and defendant's vehicle was impounded.
At approximately 1:00 a.m. on August 12, 2005, Moeller completed his affidavit in support of a request for a warrant to search defendant's vehicle "along with any and all occupants and containers therein, for marijuana and other controlled dangerous substances." Moeller's affidavit was "reviewed and approved" by an assistant prosecutor at 1:00 a.m. on August 12, 2005, and in a written memorandum to his supervisor, dated January 24, 2006, Moeller described the proceedings to obtain the search warrant as follows:[3]
On August 12, 2005, this writer contacted the [municipal court judge or issuing judge] at []his home telephone facility number. This writer informed [the municipal court judge] that this writer was seeking a[c]ourt authorized search warrant for NJ Reg. SFJ-61H, a 1995 Oldsmobile [Ciera], color red, VIN# 1G3AJ55M5S6310042. At this time the [municipal court judge] instructed this writer to fax the warrant, along with all pages of the [a]ffidavit to his residence. At this time this writer was provided with the fax number for the [municipal court judge] and [was] sworn in over the phone. The [issuing judge] then contacted this writer at OCNSF Headquarters stating that the warrant was approved and provided a signed copy of the warrant and [a]ffidavit to this writer via fax.
[(Emphasis added).]
Upon receipt of the signed warrant, issued at 1:40 a.m. on August 12, 2005, the defendant's vehicle was searched and the police seized approximately thirteen pounds of marijuana, wrapped in thirteen separate plastic bags, from the trunk of the car.
At the motion to suppress, which was non-testimonial by agreement of the parties, defendant did not challenge the adequacy of the evidence to establish probable *935 cause. Instead, his attorney argued the warrant was defective because it failed to satisfy the requirements of Rule 3:5-3(a), which provides in pertinent part as follows:
An applicant for a search warrant shall appear personally before the judge, who must take the applicant's affidavit or testimony before issuing the warrant. The judge may also examine, under oath, any witness the applicant produces, and may require that any person upon whose information the applicant relies appear personally and be examined under oath concerning such information.
On appeal, defendant contends, as he did below, that the warrant authorizing the search of defendant's car is invalid for two reasons: (1) the warrant was issued "on an unsworn statement," and (2) Investigator Moeller did "not personally appear before the issuing [j]udge." On the other hand, the State contends "that a reasoned analysis of the case law and the policy behind the [e]xclusionary [r]ule, leads to the conclusion that R. 3:5-7(g) controls and that the Law Division correctly denied the suppression motion." Rule 3:5-7(g) provides as follows: "Effect of Irregularity in Warrant. In the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution." (Emphasis added).
The Law Division judge's reasons for denying defendant's suppression motion included the following:
[W]hile we have some fine-tuning as to who said what to whom, and when it was sworn, it's really not in dispute factually. What happened here is that rather than Investigator Moeller taking his affidavit . . . to [the municipal court judge] to have him review it . . . he called and contacted [the municipal court judge] and said that . . . he needed to get a search warrant. . . .
And [the municipal court judge] . . . swore him in and then said, "Fax me the affidavit." He faxed [the affidavit] over, he faxed him the search warrant, and [the municipal court judge] reviewed it and he signed it.
. . . .
Let's go back. Let's keep our eye on the ball. . . . To keep our citizens and people safe from unreasonable searches and seizures. . . . no warrant shall issue except upon probable cause sworn before a magistrate or other judge, judicial officer, authorized to issue that warrant.
. . . .
I find that there was probable cause and I find that there was a lawful warrant. . . . [T]he constitutional rights of Mr. Gioe. . . . were protected.
. . . .
There is no constitutional violation here. If there is a deviation from the standard normal practice, that deviation is highly technical, and it does not, in fact, impair the validity and the substance of the affidavit and the search warrant. The evidence will not be suppressed.

I. The "Oath or affirmation" Requirement of the Fourth Amendment

We begin our review with an examination of the constitutional principles implicated in this case. The exclusionary rule, adopted by the United States Supreme Court in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and extended to the states in Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961), requires the suppression of evidence obtained during *936 searches and seizures in violation of the Constitution. "The overarching purpose of the [exclusionary] rule is to deter the police from engaging in constitutional violations by denying the prosecution any profit from illicitly-obtained evidence." State v. Williams, 192 N.J. 1, 14, 926 A.2d 340 (2007); see also Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960) ("The rule is calculated to prevent, not to repair. Its purpose is to deter  to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it."). "Suppressing evidence sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law." Williams, supra, 192 N.J. at 14, 926 A.2d 340.
Nevertheless, the exclusionary rule is not applied indiscriminately.
Suppression of evidence . . . has always been our last resort, not our first impulse. The exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. We have therefore been cautious against expanding it, and have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application. We have rejected indiscriminate application of the rule, and have held it to be applicable only where its remedial objectives are thought most efficaciously served  that is, where its deterrence benefits outweigh its substantial social costs.
[Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56, 64 (2006) (citations and quotations omitted).]
Similarly, in refusing to suppress evidence seized pursuant to a search warrant that described the location to be searched but misidentified the address, the New Jersey Supreme Court noted: "When the truth is suppressed and the criminal is set free, the pain of suppression is felt, not by the inanimate State or by some penitent policeman, but by the offender's next victims for whose protection we hold office." State v. Bisaccia, 58 N.J. 586, 590, 279 A.2d 675 (1971). Likewise, in State v. McCann, 391 N.J.Super. 542, 544, 554-55, 919 A.2d 136 (2007), we held suppression was not the appropriate remedy even though the municipal court judge that issued the search warrant should have recused himself due to his "long-standing attorney-client relationship" with the defendant.
Under the Fourth Amendment to the United States Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." See also N.J. Const. art. I, ¶ 7 ("[N]o warrant shall issue except upon probable cause, supported by oath or affirmation. . . ."). "Although it has sometimes been contended that noncompliance with the oath or affirmation requirement is a mere technical irregularity that does not require suppression of the evidence obtained pursuant to the mistakenly issued search warrant, this is not the case." Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 4.3(e) at 520-21 (4th ed.2004). We therefore agree with defendant to the extent he contends a search warrant issued in the absence of an oath or affirmation is invalid and requires suppression of evidence obtained pursuant thereto. See State v. Moriarty, 39 N.J. 502, 503, 189 A.2d 210 (1963) ("It is regrettable that a warrant which would have been justified by the known facts must fall, but the failure to comply with the [oath or affirmation] requirement of the Constitutions permits no other result.").
*937 "[T]he oath or affirmation . . . constitutes a strong reminder that [the affiant] has a special obligation to testify truthfully and that he is subject to punishment should he fabricate." State v. Caraballo, 330 N.J.Super. 545, 555, 750 A.2d 177 (App.Div.2000). It is well settled, however, that the Fourth Amendment does not prohibit a judge from placing an affiant who is not physically present under oath. See, e.g., United States v. Turner, 558 F.2d 46, 50 (2d Cir.1977) ("We cannot accept [defendant's] argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone."); R. 3:5-3(b) ("A Superior Court judge may issue a search warrant upon sworn oral testimony of an applicant who is not physically present."); LaFave, supra, § 4.3(e) at 519 n. 58 ("[A]n `Oath or affirmation' for Fourth Amendment purposes does not require a face-to-face confrontation between the magistrate and the affiant.").
Here, defendant contends the warrant did not issue on sworn testimony because Moeller's affidavit was unsigned when he faxed it to the issuing judge. However, the affidavit, which is signed by both Moeller and the issuing judge states: "INV. SCOTT MOELLER, of full age, being duly sworn on his oath according to law, deposes and says:. . . ." In addition, the issuing judge's signature on the affidavit confirms that the affiant  Inv. Scott Moellerwas "Sworn and subscribed" on "this 12th day of AUGUST 2005." Based on our review of Moeller's affidavit, the search warrant that was issued, and Moeller's subsequent memorandum describing the proceedings to obtain the warrant, we are satisfied the record amply supports the Law Division judge's determination that Moeller's affidavit was made with the knowledge that he was under oath and attesting to his statement under penalty of law. Absent evidence to the contrary, where an affidavit "contains the signature of the affiant and shows on its face that it was sworn to, [there] is sufficient evidence of the swearing." LaFave, supra, § 4.3(e) at 521 (footnote omitted). See also Turner, supra, 558 F.2d at 50 ("An `Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said." (Emphasis added)). Thus, the Law Division judge correctly concluded that the search warrant was supported by oath or affirmation.

II. The "Shall Appear Personally" Requirement of R. 3:5-3(a)

Having determined defendant's constitutional rights were not violated, we next examine whether Investigator Moeller's failure to personally appear before the issuing judge, in violation of Rule 3:5-3(a), requires suppression of the marijuana seized from defendant's vehicle. As a noted commentator has observed: "[A] completed affidavit . . . sent to the judge without a personal appearance by the affiant before the judge is not sufficient to satisfy Rule 3:5-3. Whether such deficiency would require the suppression of evidence seized pursuant to a warrant issued without the personal appearance by the affiant is an open question." 31 Leonard N. Arnold, New Jersey Practice Series: Criminal Practice and Procedure § 3.5, at 124 (2008). In our view, it does not.
The purpose of requiring an affiant to "appear personally" before the issuing judge stems from our Court's recognition that "[t]estimony in the judge's presence safeguards the individual's rights under Fourth Amendment and the State Constitution. The presence of the applicant, along with the testimony or affidavits of any witnesses, leads to a more thorough and deliberate examination of the factual *938 basis for issuing the warrant." State v. Valencia, 93 N.J. 126, 135, 459 A.2d 1149 (1983). Nevertheless, "[i]n the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it." R. 3:5-7(g). In analyzing whether a procedural defect constitutes a "technical" insufficiency or irregularity, we find Rule 41 of the Federal Rules of Criminal Procedure instructive. See Max Mehler, Summary And Analysis of New Rule 3:2A Governing Search Warrants, 86 N.J.L.J. 429, 429 (August 8, 1963) (noting that Rule 3:2A, the predecessor to Rule 3:5-3, was "patterned after Rule 41 of the Federal Rules of Criminal Procedure").
Rule 41 sets out the federal requirements for the issuance and execution of a search warrant. Under the federal rules, if a "fundamental" violation of Rule 41 occurs, then suppression of the evidence seized with the defective search warrant is required. United States v. Vasser, 648 F.2d 507, 510 (9th Cir.1980), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981). A violation is only "fundamental," if it "involves a constitutional violation." United States v. Johnson, 641 F.2d 652, 656 (9th Cir.1980).
Where the violation is "non-fundamental" (i.e., non-constitutional), the Johnson court held suppression of evidence would only be required if: "(1) there was `prejudice' in the sense that the search might not have occurred or would not have been so abrasive if [Rule 41] had been followed, or (2) there is evidence of intentional and deliberate disregard of [Rule 41]." Ibid. (citing Vasser, supra, 648 F.2d at 510; United States v. Radlick, 581 F.2d 225, 228 (9th Cir.1978)). Thus, in Johnson the Ninth Circuit held that although there were "no less than four technical violations of the . . . search warrant procedure," including an officer not being sworn in until after he submitted his affidavit, suppression of the evidence seized pursuant to the search warrant was not required, because "the spirit of Rule 41[was] met with full compliance." Ibid.
Applying the two-pronged test enunciated in Johnson to the present matter, the marijuana found in defendant's car should not be suppressed. The first prong of the Johnson test is satisfied because the search of the trunk of defendant's car would have occurred had the procedural requirements of Rule 3:5-3(a) been explicitly followed. Namely, if Investigator Moeller personally appeared before the issuing judge, the same affidavit would have been produced, based upon the same evidence establishing probable cause, and the search warrant would undoubtedly have been issued exactly as it was via facsimile.
Secondly, as conceded by the defendant, there is no evidence of bad faith or deliberate disregard of Rule 3:5-3(a) by Moeller. To the contrary, Moeller sought a warrant when, at least arguably, a warrant was not necessary to search defendant's impounded automobile. See State v. Dickey, 152 N.J. 468, 483-84, 706 A.2d 180 (1998) ("An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage."); State v. Sugar, 100 N.J. 214, 238, 495 A.2d 90 (1985) (describing the inevitable discovery exception to the exclusionary rule). Thus, applying the two-pronged Johnson test, suppression of the marijuana is not appropriate.
*939 In sum, while we do not condone the procedures utilized by the issuing judge and express no opinion as to whether, in different circumstances, the failure of an affiant to personally appear will require suppression of evidence, we are persuaded that neither the Fourth Amendment of the United States Constitution nor the provisions of Article I, Paragraph 7 of the New Jersey Constitution mandate suppression of the evidence seized from defendant's automobile. Obviously, there were procedural irregularities in the proceedings to obtain the search warrant that issued, but the record clearly supports the Law Division's determination that Investigator Moeller's affidavit established sufficient probable cause to justify the issuance of the search warrant. It is equally clear the requirements of Rule 3:5-3(a) were not intentionally or deliberately disregarded.[4] In fact, Investigator Moeller merely carried out the instructions he received from the issuing judge. Consequently, "[w]e see no threat to Fourth Amendment values," and we find no legitimate reason to invalidate the warrant. Bisaccia, supra, 58 N.J. at 593, 279 A.2d 675.
Affirmed.
NOTES
[1] Frank Caruso, Jr. is not a party to this appeal, therefore Anthony Gioe is referred to as "defendant" throughout this opinion.
[2] We note defendant's reservation of his right to appeal the denial of his motion to suppress was unnecessary. See R. 3:5-7(d).
[3] Although State v. Fariello, 71 N.J. 552, 562, 366 A.2d 1313 (1976), stands for the proposition that an affiant cannot "rectify any deficiency in his testimony before the issuing judge by post-search repair," Investigator Moeller's memorandum dated January 24, 2006, did not supplement the record with ex post evidence supporting probable cause, but rather clarified the procedures he followed in applying for the search warrant.
[4] We recognize our Court has rejected the "good-faith exception" to the exclusionary rule. See State v. Novembrino, 105 N.J. 95, 157-58, 519 A.2d 820 (1987). In this case, under both the Federal and State Constitutions, probable cause was clearly established, and our conclusion that the exclusionary rule does not apply is not premised on any exception thereto. We note the absence of bad faith on Investigator Moeller's part solely in accordance with our Supreme Court's mandate in Rule 3:5-7(g).