NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4816-12T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CALVIN PRESLEY, SHILYRE
COLLINS, and MADELINE SANCHEZ,

    Defendants-Appellants,

and

ELISE MINTZER and GARRET
LARDIERE 2ND,

    Defendants.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CALVIN PRESLEY, DARLENE OTT,
ANDREA DEKKER and CHRISTOPHER
CLARK,

    Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 17, 2014**
>
> **APPELLATE DIVISION**

Argued November 6, 2013 — Decided July 17, 2014

Before Judges Fisher, Espinosa and O'Connor.

On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 12-12-2405 and 12-12-2484.

John P. Reilly argued the cause for appellant Calvin Presley.

Joseph E. Krakora, Public Defender, attorney for appellants Shilyre Collins and Darlene Ott, joins in the brief of appellant Calvin Presley.

Michael H. Schreiber, attorney for appellants Andrea Dekker and Madeline Sanchez, joins in the brief of appellant Calvin Presley.

Glenn D. Kassman, attorney for appellant Christopher Clark, joins in the brief of appellant Calvin Presley.

Roberta DiBiase, Senior Assistant Prosecutor, argued the cause for respondent (Joseph D. Coronato, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Supervising Assistant Prosecutor, of counsel; Ms. DiBiase and Nicholas Norcia, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In State v. McCann, 391 N.J. Super. 542 (App. Div. 2007), we announced a prospective "bright-line rule" that called for invalidating search warrants issued by a judge who was bound to recuse himself or herself based on a prior relationship. Defendants here ask us to apply that rule to invalidate search warrants and orders, suppress all evidence obtained, and dismiss

two resulting indictments because the judge who issued the warrants prosecuted one of them as an assistant prosecutor. The judge recused himself upon being alerted to the disqualifying facts, and so, the question here is not one of recusal but of remedy. Specifically, we consider whether the application of a bright-line rule is appropriate on the facts of this case. Those circumstances include the following: the judge prosecuted only one of the defendants; no defendant alleges the judge was biased or aware of the disqualifying facts when he issued the warrants or that there was insufficient probable cause for their issuance; and finally, the defendant prosecuted by the judge withheld the disqualifying facts while appearing before the judge on unrelated matters for "strategic" reasons for over a year. Because we conclude that McCann is distinguishable and that the remedy sought by defendants will not serve the interests of the Code of Judicial Conduct, we affirm the order denying defendants' motion for such relief.

I.

Like so many Superior Court Judges, the judge here served as an assistant prosecutor before he was appointed to the bench

in 2007.[1] During his decade-long service as a prosecutor, he represented the State in four matters in which defendant Shilyre Collins entered guilty pleas pursuant to plea agreements and was sentenced. There is no contention that he participated in the prosecution of defendants Calvin Presley, Madeline Sanchez, Elise Mintzer, Garret Lardiere 2nd, Darlene Ott, Andrea Dekker, or Christopher Clark (the other defendants) as an assistant prosecutor.

In the months of March and April 2012, approximately seven years after he was last involved in a prosecution of Collins, the judge reviewed a series of applications and issued warrants that authorized the installation and use of tracking devices, the interception of wire and electronic communications, searches of various locations, and the arrests of Collins and Presley (collectively, the warrants). This was not the first criminal prosecution involving Collins in which the judge served in a judicial capacity.

More than one year earlier, in January 2011, the judge arraigned Collins and Presley on Indictment No. 10-12-2195, which charged them with third-degree drug possession offenses.

---

[1] At oral argument on the motion, Presley's counsel asserted that eight of the judges sitting in Ocean County had previously served as assistant prosecutors.

A motion to suppress evidence was filed and pending until resolved on November 15, 2011. The prosecutor dismissed the indictment against Collins after her co-defendant exonerated her. At no time during the year that this indictment was pending before the judge did Collins ever remind the judge of his prior prosecution of her or request his disqualification.

In November 2011, the judge arraigned Presley and Collins on another Indictment, No. 11-10-1923, which charged them with drug offenses and other offenses.[2] A status conference was scheduled, with motions,[3] for April 18, 2012.

The warrants that are the subject of this matter were issued by the judge during that period between the arraignment on the second Indictment, No. 11-10-1923, and the scheduled April 2012 court date. Approximately six months later, within the context of that pending matter, the prosecutor sent a letter to the judge and defense counsel, dated October 3, 2012, stating

---

[2] Presley was charged with three counts of third-degree drug offenses, third-degree hindering apprehension, and fourth-degree tampering with physical evidence. Collins was charged with two counts of third-degree drug offenses and third-degree resisting arrest. A third defendant was also charged with attempting to possess a controlled dangerous substance (CDS).

[3] The record does not disclose what motions were filed regarding this indictment. However, according to the motion judge's opinion, a search warrant was issued by the same judge who issued the warrants challenged here for a vehicle occupied by Presley and Collins.

the judge had prosecuted Collins in an earlier matter, Indictment No. 04-04-668.[4]  At the next conference scheduled regarding Indictment No. 11-10-1923, the judge advised counsel he would not preside over any matters involving Collins, and the cases were transferred to another judge (the motion judge).  It is undisputed that no defendant raised the issue of disqualification prior to the prosecutor's disclosure.

In October 2012, Presley moved for an order declaring the warrants issued by the judge invalid, suppressing all evidence against him obtained through the execution of those warrants, and dismissing the charges against him.  Collins later joined Presley's motion.

---

[4]  The State concedes that the judge represented the State in a total of four matters. In addition to the one revealed by Promis/Gavel in October 2012, those matters included the following:

- On December 11, 2001, he executed a plea agreement in which Collins entered a guilty plea pursuant to a plea agreement to one count of Indictment No. 01-07-987 and to Indictment No. 01-11-1546, both of which charged her with third-degree possession of cocaine.
- On November 10, 2003, he executed a plea agreement in which Collins pled guilty to one count of Indictment 03-04-466, which was amended to third-degree conspiracy to possess cds.
- On July 15, 2005, he represented the State when Collins entered a guilty plea to a violation of probation (VOP) related to the sentences imposed on Indictment Nos. 01-07-987, 01-11-1546, and 03-04-466, and was sentenced on the VOP and on her guilty plea to one count of another Indictment, No. 04-04-668.

In December 2012, while the motion was pending, the grand jury returned Indictment No. 12-12-2405, charging Presley, Collins, Sanchez, Mintzner, and Lardiere with drug conspiracy and possession offenses. A second indictment, in which Collins was not a defendant, charged Presley, Ott, Dekker, and Clark with conspiracy to commit robbery and robbery (Indictment No. 12-12-2484).

At oral argument on the motion, no defendant contended that the judge was biased or recalled his prosecution of Collins at the time he issued the orders. To the contrary, Presley's counsel stated he had "no reason to believe that [the judge] recalled or [was] biased," and further declared that whether the judge had such recollection was "entirely completely irrelevant." Rather, he stated the issue called for an "ex post facto analysis" in which the judge's failure to recuse himself sua sponte should be evaluated "in hindsight," informed by the facts that came to light afterward. Because the judge had "personally prosecute[d]" Collins, Presley argued that the McCann bright-line rule applied, requiring the invalidation of all the orders and warrants and the suppression of all evidence obtained, against not only Collins but against all the defendants in both indictments.

Collins's attorney argued that the warrants were legally defective and invalid because they were not issued by a "neutral and detached magistrate," see Johnson v. United States, 333 U.S. 10, 13-14, 68 S. Ct. 367, 369, 92 L. Ed. 436, 440 (1948), and therefore, it was unnecessary to show actual bias by the judge. He rejected the notion that Collins had any responsibility to raise the issue of a conflict while her prior matters were proceeding before the judge. He maintained it was a defendant's right to make "a strategic assessment" as to whether and when a motion should be brought:

> Miss Collins [and I] had our own strategic[] reasons of why, although we may have known about this conflict before this case came along, had our strategic[] reasoning, I'm sure, that we're not going to reveal to anyone at this point why we didn't perhaps decide to raise this issue at that point.

The motion judge denied defendants' motions in a written decision. We granted defendants leave to appeal.[5]

Defendants raise the following issues for our consideration:

POINT I

THE [] ORDERS/WARRANTS ISSUED IN FURTHERANCE
OF THE STATE'S INVESTIGATION OF THE CRIMINAL

---

[5] Presley filed a motion for leave to appeal. Collins, Sanchez, Clark, and Dekker later moved to join Presley's motion, and this court granted the motion. Collins, Sanchez, Clark, and Dekker have chosen to rely on Presley's brief and argument.

MATTER INVOLVING COLLINS MUST BE DECLARED INVALID, THE EVIDENCE OBTAINED THEREBY SUPPRESSED, AND THE SUBJECT INDICTMENTS DISMISSED FOR HAVING VIOLATED THE "BRIGHT LINE RULE" ESTABLISHED BY THIS COURT IN THE CASE OF <u>STATE V. MCCANN</u>.

<u>POINT II</u>

THE COURT BELOW ERRED BY APPLICATION OF AN UNFOUNDED SUBJECTIVE ANALYSIS AND FAILING TO APPLY THE <u>MCCANN</u> OBJECTIVE "BRIGHT LINE RULE" FOR DISQUALIFICATION AND, THEREFORE, MUST BE REVERSED.

Notably, no defendant challenges the sufficiency of the evidence presented in the affidavits to establish probable cause for the issuance of the warrants. And no one argues that the judge knew of the disqualifying prior prosecutions at the time he reviewed the affidavits or that he was actually biased against any defendant. Defendants argue that such questions are irrelevant and that, based upon a "hindsight" analysis, the grounds for the judge's recusal alone dictate the nullification of all his actions, suppression of all evidence, and dismissal of the charges. We disagree.

## II.

We begin by reviewing the principles that required the judge's recusal here.

The "overarching objective of the Code of Judicial Conduct is to maintain public confidence in the integrity of the judiciary." <u>In re Advisory Letter No. 7-11 of the Supreme Court</u>

Advisory Comm., 213 N.J. 63, 71 (2013). Such confidence "depends on a belief in the impersonality of judicial decisionmaking." United States v. Nobel, 696 F.2d 231, 235 (3d Cir. 1982), cert. denied, 462 U.S. 1118, 103 S. Ct. 3086, 77 L. Ed. 2d 1348 (1983). Because "'justice must satisfy the appearance of justice,'" State v. Deutsch, 34 N.J. 190, 206 (1961) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 16 (1954)), we are as concerned with how facts may reasonably be perceived by the public as we are with actual cases of partiality. See DeNike v. Cupo, 196 N.J. 502, 514 (2008); see also State v. McCabe, 201 N.J. 34, 42-43 (2010); State v. Kettles, 345 N.J. Super. 466, 469-71 (App. Div. 2001), certif. denied, 171 N.J. 443 (2002). Thus, without any proof of actual prejudice, "'the mere appearance of bias may require disqualification.'" Panitch v. Panitch, 339 N.J. Super. 63, 67 (App. Div. 2001) (quoting State v. Marshall, 148 N.J. 89, 279, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997)). "However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." Marshall, supra, 148 N.J. at 279. The Supreme Court has distilled these principles to this question: "Would a reasonable, fully informed person have doubts about the judge's

10

impartiality?" DeNike, supra, 196 N.J. at 517; see also In re Advisory Letter No. 7-11, supra, 213 N.J. at 74-75.

Pursuant to Rule 1:12-1(g), a judge must be disqualified

> when there is any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

An administrative directive promulgated by the Administrative Director of the Courts, dated September 19, 1983, more particularly addresses the circumstances here:

> A judge should disqualify himself or herself from hearing a criminal matter involving a defendant who the judge, in his or her previous capacity, had personally prosecuted or defended, or had represented in a civil matter in the past.

Because he had previously prosecuted Collins, the judge here had a non-waivable conflict that required his disqualification from matters involving her. Rivers v. Cox-Rivers, 346 N.J. Super. 418, 421 (App. Div. 2002); Kettles, supra, 345 N.J. Super. at 469-71; State v. Tucker, 264 N.J. Super. 549, 555 (App. Div. 1993), certif. denied, 135 N.J. 468 (1994); Code of Judicial Conduct, Canon 3(C), (D). When presented with the disqualifying fact, he recused himself, and the matters proceeded before another judge. From that point forward, all issues regarding the admissibility or suppression of evidence, motion practice, the conduct of any plea

negotiations or trial, and the ultimate disposition of the charges against Collins and the other defendants rested in the hands of a judge whose impartiality is unchallenged.

The question here is, given these facts, what remedy is "<u>required</u> to restore public confidence in the integrity and impartiality of the proceedings, to resolve the dispute in particular, and to promote generally the administration of justice." <u>DeNike</u>, <u>supra</u>, 196 <u>N.J.</u> at 519 (emphasis added).

### III.

As defendants' argument rests largely upon our decision in <u>McCann</u>, we briefly review that case. After the defendant was indicted on various drug charges, he moved to suppress evidence seized pursuant to a search warrant issued by a municipal court judge he considered his "family attorney" on the ground that the judge was not a "neutral and detached magistrate" as required to satisfy the warrant requirement of the federal and State constitutions.[6] <u>McCann</u>, <u>supra</u>, 391 <u>N.J. Super.</u> at 544-45. The defendant presented the following facts to support his argument:

---

[6] Under the Fourth Amendment to the United States Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." <u>See also</u> <u>N.J. Const.</u> art. I, ¶ 7 ("[N]o warrant shall issue except upon probable cause, supported by oath or affirmation . . . ."); <u>Johnson</u>, <u>supra</u>, 333 <u>U.S.</u> at 13-14, 68 <u>S. Ct.</u> at 369, 92 <u>L. Ed.</u> at 440; <u>State v. Brown</u>, 216 <u>N.J.</u> 508, 539 (2014).

> [H]e had known the Municipal Court judge for twenty or thirty years, had consulted with him on various legal matters, and had been represented by him in one litigated case about ten years earlier. Defendant considered the judge his "family attorney[.]"
>
> . . . .
>
> He had been represented by him. His two sisters had been represented by him. His mother had been represented by him. He had been to his house on at least 12 occasions. He has sought his counsel on at least ten occasions. He had worked with him as part of his function with Winslow Township as an inspector. And he was so comfortable with him that he was able to approach him three weeks before the issuance of this search warrant and request an OR bail for a friend.
>
> [Ibid.]

The motion judge granted the defendant's suppression motion. We granted the State leave to appeal.

In our decision, we reviewed the "neutral and detached magistrate" requirement, cases from out of state that considered whether the judge's prior acquaintance with the defendant was a basis for invalidating a search warrant (State v. Mandravelis, 325 A.2d 794 (N.H. 1974), and United States v. Heffington, 952 F.2d 275 (9th Cir. 1991)), the governing Canons of the Code of Judicial Conduct, New Jersey cases that interpreted when disqualification was required, and federal recusal practice. We agreed with the motion judge that the municipal court judge

should not have reviewed the warrant application.  However, we concluded that suppression was not appropriate, stating,

> Here, defendant makes no assertion of bias on the part of the judge who signed the warrant and the facts concerning the prior relationship suggest none.  More importantly, as we have noted, no case until today has expressly condemned the practice in question, which likely occurs only infrequently.  As a result, our ruling shall be purely prospective.
>
> In the future, if a defendant makes a particularized and credible assertion of facts that objectively suggest an appearance of partiality on the part of the judge issuing a search warrant, based on a prior relationship or otherwise, a "bright-line" rule invalidating the search warrant will be applicable.  The test is similar to that used in judging whether recusal is warranted under the principles discussed earlier.  We ask whether, if defendant were a party to the warrant application, would he be entitled to recusal of the judge.  If so, then the warrant proceeding "is a nullity."
>
> [McCann, supra, 391 N.J. Super. at 554-55 (citations omitted).]

IV.

Based on no more than the conflict involving Collins, the defendants who were not previously prosecuted by the judge argue that McCann requires the invalidation of warrants, suppression of evidence, and dismissal of indictments against all of them because the McCann "bright-line rule" calls for "invalidating the search warrant."  Id. at 555.  Defendants argue that, as a

14

result, the warrants were "invalid from their inception" and therefore invalid as to all defendants. We do not accept the result urged as required by McCann or any other authority.

Importantly, McCann and the cases relied upon in our formulation of the bright-line rule each involved an individual defendant who had a prior relationship with the judge that made recusal necessary. McCann, supra, 391 N.J. Super. at 550-55.[7] We did not consider whether the circumstances giving rise to an objectively reasonable belief that the judge could not qualify as a "neutral and detached magistrate" based on his relationship with one defendant necessarily invalidated a warrant admittedly based on probable cause as to other defendants with whom he had no disqualifying history. We explained that the application of the disqualification rule depended upon the question "whether, if defendant were a party to the warrant application, would he [or she] be entitled to recusal of the judge. If so, then the warrant proceeding 'is a nullity.'" McCann, supra, 391 N.J. Super. at 555 (quoting Rivers, supra, 346 N.J. Super. at 421). Here, no defendant other than Collins claims a disqualifying relationship with the judge. As we defined the issue in McCann,

---

[7] See Deutsch, supra, 34 N.J. at 197; Rivers, supra, 346 N.J. Super. at 420-21; Kettles, supra, 345 N.J. Super. at 467-69; Tucker, supra, 264 N.J. Super. at 553-55; State v. Horton, 199 N.J. Super. 368, 374-77 (App. Div. 1985).

none of them would be entitled to his disqualification at the time he issued the warrants or the nullification of any action he took in the case.

Moreover, our discussion of Heffington, supra, 952 F.2d at 275, signals that we did not intend such a far-reaching result. McCann supra, 391 N.J. Super. at 548-50. In Heffington, the judge who issued a search warrant for the home of one defendant's stepfather had represented, while serving as a federal defender, one of the co-defendants in another drug case involving two of the other co-defendants. Heffington, supra, 952 F.2d at 277-78. The defendant challenged the warrant, claiming the judge was not neutral and raised several theories for the invalidation of the warrant. The Court of Appeals specifically considered defendant's argument that the judge's prior representation of the co-defendant presented an appearance of partiality and assumed such an appearance existed. The court observed that "mere appearances of partiality" rarely rise "to the level of constitutional error." Id. at 279. Despite its comment that the judge "may not have been the best possible 'neutral and detached' magistrate in Central California to issue the search warrant," the court concluded that the appearance was "not so 'extreme'" to result in a constitutional defect in the warrant, which was clearly based on probable cause. Id. at 279-

80. Not only did we cite Heffington with approval, we observed, "Professor LaFave notes his agreement with Heffington. . . ."[8] McCann, supra, 391 N.J. Super. at 550 (citing 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.2(b) at 444 (3d ed. 1996)).

In considering whether the other defendants may seek the invalidation of the warrants based on the judge's prior prosecution of Collins, we find additional guidance in the principles that govern whether a defendant has standing to challenge a search or seizure on constitutional grounds. Our Supreme Court noted that the fact that "evidence implicates a defendant in a crime is not, in and of itself, sufficient to confer standing" to seek the suppression of evidence. State v. Bruns, 172 N.J. 40, 58 (2002).

> There also must be at a minimum some contemporary connection between the defendant and the place searched or the items seized. Despite our broad standing rule, we acknowledge the soundness of the general principle that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose

---

[8] We also noted Professor LaFave's approval of Mandravelis, supra, the other out of state case we discussed in which the judge's prior acquaintance with the defendant was considered and rejected as a basis for invalidating a search warrant. McCann, supra, 391 N.J. Super. at 548. The Mandravelis court found the defendant failed to show that the issuing magistrate was prejudiced against him based on the prior association. Mandravelis, supra, 325 A.2d at 795.

> rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."
>
> [Ibid. (emphasis added) (quoting Alderman v. United States, 394 U.S. 165, 171-72, 89 S. Ct. 961, 965, 22 L. Ed. 2d 176, 185-86 (1969)).]

We conclude that a parallel standard should be applicable here. Other than Collins, no defendant had any prior relationship with the judge that required his recusal. Defendants have cited no authority for the proposition that the prosecution of a co-defendant would require the judge's disqualification as to them. In the absence of a constitutional defect, the mere fact that evidence was obtained and charges filed as the result of warrants issued by a judge with a disqualifying conflict as to one defendant is an insufficient basis for the other defendants to seek the nullification of orders entered by the judge and the additional relief sought.

V.

We turn to the argument that because the judge was required to recuse himself based on the prior prosecution of Collins, the bright-line rule we announced in McCann applies to render his judicial acts as to her a nullity. There are significant factual distinctions between this case and the facts in McCann. First, it was evident in McCann that the municipal court judge was aware of the disqualifying association at the time he issued

18

the search warrant.  In contrast, as Presley's counsel conceded, here there was "no reason to believe that [the judge] recalled" the prior prosecution.  And, the defendant in <u>McCann</u> did not delay raising the disqualifying facts as Collins did here for strategic reasons.

## A.

When a judge has knowledge of facts that require disqualification at the time he or she engages in judicial conduct involving a party, there is a strong and reasonable inference that the judge's neutrality will be affected by facts outside the affidavit or proceeding.[9]  It is clear that the judge's knowledge was a foundational assumption for our decision in <u>McCann</u>.  After recounting the facts presented to support McCann's argument that the judge was not a neutral and detached magistrate, we stated,

---

[9]  Ironically, although the information the judge acquired by presiding over two cases involving Collins for over one year is likely to have equaled or exceeded that acquired in his "personal" prosecution of her, that exposure does not provide a basis for his disqualification.  <u>See</u> <u>Liteky v. United States</u>, 510 <u>U.S.</u> 540, 555, 114 <u>S. Ct.</u> 1147, 1157, 127 <u>L. Ed.</u> 2d 474, 491 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.");  <u>see also</u> <u>Tucker</u>, <u>supra</u>, 264 <u>N.J. Super.</u> at 555 (recognizing that even in cases of "personal" prosecution, the roles performed by a prosecutor entail varying degrees of involvement with a defendant).

> We assume, as we must, that he carefully reviewed the [] affidavit that revealed defendant's involvement and that he knew or should have known that this was his former client. Under these circumstances, there was an appearance of impropriety under R. 1:12-1[(g)].[10]
>
> [McCann, supra, 391 N.J. Super. at 554.]

Further, in each of the cases we cited as examples where the judge should have recused himself or herself based upon a current or prior relationship with a litigant,[11] the disqualifying facts were known to the judge at the time the recusal issue was raised.[12]

In Deutsch, supra, 34 N.J. at 196-97, the defendant moved to withdraw his non vult plea and for the judge to disqualify himself before sentencing. The Court found the motions should have been granted because the judge's brother was an assistant

---

[10] Following our decision in McCann, the rule was redesignated from R. 1:12-1(f) to R. 1:12-1(g).

[11] Horton, supra, 199 N.J. Super. at 368, does not diminish the significance of a judge's knowledge at the time the disqualification issue is raised since we reversed the conviction on other grounds. Id. at 377.

[12] Although we did not cite State v. Muraski, 6 N.J. Super. 36, 37-38 (App. Div. 1949) specifically for this proposition, it stands as a classic example of how facts known to the judge required recusal. We reversed the conviction of a defendant who appeared before a magistrate for trial on charges of driving while intoxicated. The magistrate had been crossing the street when the defendant narrowly missed hitting him and assisted a police officer in taking the defendant to a doctor for examination thereafter.

prosecutor and a law partner of the assistant prosecutor handling the prosecution against defendant.

We reversed the defendant's convictions in <u>Tucker</u>, <u>supra</u>, 264 <u>N.J. Super.</u> at 555, because his motion for disqualification should have been granted when defense counsel advised the judge prior to trial that the judge had presented two cases involving the defendant to the grand jury while the judge was an assistant prosecutor. <u>Id.</u> at 553.

It was the trial judge who raised the disqualification issue in <u>Kettles</u>, <u>supra</u>, 345 <u>N.J. Super.</u> at 467-71, when she recognized the defendant before trial began. She informed the defense attorney that she had presented a different case against the defendant to the grand jury when she served as an assistant prosecutor. On defendant's petition for post-conviction relief, we held that the trial judge should have recused herself, notwithstanding the defendant's stated waiver of any objection to the judge presiding over his trial. <u>Ibid.</u>

In <u>Rivers</u>, <u>supra</u>, 346 <u>N.J. Super.</u> at 419-20, the litigant filed a motion after a plenary hearing in a matrimonial action, seeking the trial judge's recusal based on bias and the fact he had appeared as adverse counsel in the same matrimonial matter some years earlier. We concluded that the motion for recusal should have been granted, that the order entered had to be

vacated and the matter remanded for a new hearing before a different judge. Although we announced a bright-line rule in that case, the rule was limited to circumstances where disqualification was already required by Rule 1:12-1(c) and Canon 3(C)(1)(b):

> Except when required by the rule of necessity, <u>where a judge has previously represented one of the parties in a matter before him against the other</u>, any judicial action taken is a nullity, whether the conflict comes to light during the proceedings before an order enters or reasonably soon following the conclusion of the matter after an order has been entered.
>
> [<u>Rivers</u>, <u>supra</u>, 346 <u>N.J. Super.</u> at 421 (emphasis added).]

Our Supreme Court has also given significant weight to the public's perception of facts known contemporaneously in establishing precedent for mandatory disqualifications. See <u>In re Advisory Letter No. 7-11</u>, <u>supra</u>, 213 <u>N.J.</u> at 66 (municipal court judge disqualified from handling criminal matters arising from municipality where his son served as a police officer); <u>McCabe</u>, <u>supra</u>, 201 <u>N.J.</u> at 38 (holding part-time municipal court judges must recuse themselves whenever the judge and a lawyer for a party are adversaries in another open, unresolved case); <u>DeNike</u>, <u>supra</u>, 196 <u>N.J.</u> at 519 (holding "judges may not discuss or negotiate for employment with any parties or attorneys

involved in a matter in which the judge is participating personally and substantially").

Defendants argue that whether the judge knew of the prior prosecution at the time he issued the warrants is irrelevant because we should conduct an analysis in "hindsight." The facts as ultimately revealed are properly considered as to the disqualification issue in light of our concern with even the appearance of partiality. However, it does not follow that we should view the facts in hindsight in determining whether evidence should be suppressed. Our concern is not to punish but to identify what remedy is "required to restore public confidence in the integrity and impartiality of the proceedings, to resolve the dispute in particular, and to promote generally the administration of justice." DeNike, supra, 196 N.J. at 519.

Even when we apply the exclusionary rule to impose a cost for Fourth Amendment violations, we "consider the totality of the information available to the officer at the time of the conduct" to evaluate whether a constitutional defect exists. State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (emphasis added) (citing State v. Pineiro, 181 N.J. 13, 21 (2004)), certif. denied, 186 N.J. 242 (2006). "Information acquired subsequently cannot be used to either bolster or defeat the facts known at the time." Id. at 315-16; see also 2 Wayne R.

LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> §
3.2(d) at 57 (5th ed. 2012) ("It is axiomatic that hindsight may
not be employed . . . ."). Similarly, the facts known to the
judge at the time a warrant is issued should carry considerable
weight in assessing what remedy is required to restore public
confidence.

B.

The implicit premise for defendants' argument is that
grounds for a judge's disqualification equate with the level of
partiality that amounts to the constitutional defect that exists
when the reviewing judicial officer cannot qualify as a "neutral
and detached magistrate." <u>See</u> <u>Johnson</u>, <u>supra</u>, 333 <u>U.S.</u> at 13-
14, 68 <u>S. Ct.</u> at 369, 92 <u>L. Ed.</u> at 440. Historical examples of
this constitutional defect have occurred when the magistrate
acted in a law enforcement capacity rather than as a judicial
officer, <u>e.g.</u>, <u>Lo-Ji Sales, Inc. v. New York</u>, 442 <u>U.S.</u> 319, 327,
99 <u>S. Ct.</u> 2319, 2325, 60 <u>L. Ed.</u> 2d 920, 929 (1979); <u>Coolidge v.
New Hampshire</u>, 403 <u>U.S.</u> 443, 453, 91 <u>S. Ct.</u> 2022, 2031, 29 <u>L.
Ed.</u> 2d 564, 575 (1971), and when the search warrant was issued
by an unsalaried justice of the peace who had a personal and
substantial financial interest in issuing the warrant that
precluded the required neutrality, <u>e.g.</u>, <u>Connally v. Georgia</u>,
429 <u>U.S.</u> 245, 251, 97 <u>S. Ct.</u> 546, 549, 50 <u>L. Ed.</u> 2d 444, 449

(1977).  As we observed in <u>McCann</u>, <u>supra</u>, "none of these decisions has any bearing on the issue before us."  391 <u>N.J. Super.</u> at 548.

To be sure, there is some overlap between the principles applicable to disqualification and the constitutional requirement that warrants be issued by a "neutral and detached magistrate."  Both analyses require the judicial officer to be impartial.  But, the grounds for disqualification are far broader.  To serve the objective to "maintain public confidence in the integrity of the judiciary," <u>In re Advisory Letter No. 7-11</u>, <u>supra</u>, 213 <u>N.J.</u> at 71, we are equally concerned with the appearance of partiality, even in the absence of actual prejudice to a litigant.  <u>Panitch</u>, <u>supra</u>, 339 <u>N.J. Super.</u> at 66-67.

Generally, the exclusionary rule applies only to evidence obtained in violation of the Fourth Amendment to the United States Constitution or Article I, Paragraph 7, of the New Jersey Constitution.  <u>See</u> <u>State v. Evers</u>, 175 <u>N.J.</u> 355, 378-80 (2003). "The overarching purpose of the [exclusionary] rule is to deter the police from engaging in constitutional violations by denying the prosecution any profit from illicitly-obtained evidence." <u>State v. Williams</u>, 192 <u>N.J.</u> 1, 14 (2007); <u>see also</u> <u>State v. Harris</u>, 211 <u>N.J.</u> 566, 590 (2012).

"[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level." Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820-21, 106 S. Ct. 1580, 1584-85, 89 L. Ed. 2d 823, 831-32 (1986) (quoting FTC v. Cement Inst., 333 U.S. 683, 702, 68 S. Ct. 793, 804, 92 L. Ed. 1010, 1035 (1948)); see also Heffington, supra, 952 F.2d at 279; McCann, supra, 391 N.J. Super. at 549-50.[13] Rather, issues involving a judge's qualifications to hear a case are ordinarily resolved "by common law, statute, or the professional standards of the bench and bar." Bracy v. Gramley, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 1797, 138 L. Ed. 2d 97, 104 (1997); see also Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749, 754 (1927) ("[Not all] questions of judicial qualification . . . involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion."). As we have discussed, the judge's disqualification here was mandated by

---

[13] In McCann, we described the test for application of the "bright-line rule" as "similar to that used in judging whether recusal is warranted," but we also stated that the analysis was subject to the principles discussed in our opinion, 391 N.J. Super. at 555, which included our extensive review of Heffington and its recognition "of civil cases demonstrating 'a measure of caution on the part of the courts before concluding that mere appearances of partiality have, in fact, risen to the level of constitutional error.'" Id. at 549 (quoting Heffington, supra, 952 F.2d at 279).

Rule 1:12-1(g), Canon 3(C) of the Code of Judicial Conduct, and the administrative directive, not by a constitutional violation.

Yet, claiming no bias or knowledge by the judge that would sully his neutrality, defendants contend this one factor -- the appearance of partiality -- is sufficient to invalidate all the judge's acts. In effect, they urge an exclusionary rule to be administered based solely upon an "appearance of partiality" sufficient to require disqualification under the Rule, Canon, and administrative directive, unfettered by any thoughtful analysis.

Our concern that "justice must satisfy the appearance of justice," Deutsch, supra, 34 N.J. 206, does not elevate the appearance of partiality, perceived in retrospect, to a dispositive factor that requires the suppression of evidence.[14] Even when we suppress evidence to preserve constitutional principles, we recognize that "the exclusionary rule exacts a

_____

[14] In fact, the Supreme Court has found that disqualification may not be required (even by the administrative directive issued September 19, 1983) when a PCR judge's role in the prior prosecution of an unrelated indictment was marginal, remote, and not realized by the judge. The Court therefore concluded defendant had not established that reason existed that "might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so," in violation of Rule 1:12-1. State v. Harris, 181 N.J. 391, 511 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

high price on society by depriving the jury or judge of reliable evidence that may point the way to the truth." Williams, supra, 192 N.J. at 14. "When the truth is suppressed and the criminal is set free, the pain of suppression is felt, not by the inanimate State or by some penitent policeman, but by the offender's next victims for whose protection we hold office." State v. Bisaccia, 58 N.J. 586, 590 (1971). Accordingly, "the exclusionary rule is not applied indiscriminately." State v. Gioe, 401 N.J. Super. 331, 339 (App. Div. 2008), certif. denied, 199 N.J. 129 (2009).

> Suppression of evidence . . . has always been our last resort, not our first impulse. The exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. We have therefore been cautious against expanding it, and have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application. We have rejected indiscriminate application of the rule, and have held it to be applicable only where its remedial objectives are thought most efficaciously served--that is, where its deterrence benefits outweigh its substantial social costs.
>
> [Ibid. (quoting Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56, 64 (2006).]

Our Supreme Court has similarly stated that the exclusionary rule should be "applied to those circumstances

where its remedial objectives can best be achieved," Williams, supra, 192 N.J. at 15, and has acknowledged, "Sometimes, the cost of excluding evidence is not justified by the rule and its purposes." State v. Herrerra, 211 N.J. 308, 330 (2012); see also State v. Badessa, 185 N.J. 303, 311 (2005); State v. Hai Kim Nguyen, 419 N.J. Super. 413, 428 (App. Div.), certif. denied, 208 N.J. 339 (2011). Therefore, our courts have declined to apply the exclusionary rule when doing so

> would advance none of its purposes -- deterrence, judicial integrity, and imposing a cost on illicit behavior -- and would disserve the process of doing justice in this state by preventing the introduction of reliable and relevant evidence in a criminal prosecution. Use of that evidence in this state will not offend the integrity of our judicial process.
>
> [Evers, supra, 175 N.J. at 380; see also Harris, supra, 211 N.J. at 590; Gioe, supra, 401 N.J. Super. at 341-44.]

It is evident that the suppression of the evidence obtained through the warrants here would serve none of the remedial purposes of the exclusionary rule. There is no allegation of police misconduct or a claim that the warrants were issued on less than probable cause. Defendants concede that the judge was not biased in discharging his judicial duty. In short, there is no constitutional imperative for the suppression of evidence here.

VI.

We therefore consider whether nullifying all the judicial action here is required to restore public confidence in the integrity of the judicial process.

The nature and extent of how the proceedings have been tainted by the judge's participation clearly inform the nature and extent of the remedy required. When a judge engaged in negotiations for employment with a law firm appearing before him, the Supreme Court concluded that "a knowledgeable, objective observer" might reasonably perceive that the negotiations could have "infected all that occurred beforehand." DeNike, supra, 196 N.J. at 519. Accordingly, the Court determined that "a full retrial [was] required to restore public confidence in the integrity and impartiality of the proceedings, to resolve the dispute in particular, and to promote generally the administration of justice." Ibid.; see also Kettles, supra, 345 N.J. Super. at 471; Rivers, supra, 346 N.J. Super. at 423.

In contrast, in a case we decided after McCann, we concluded that a retrial was not required despite a municipal court judge's conflict. State v. Taimanglo, 403 N.J. Super. 112, 122-23 (App. Div. 2008), certif. denied, 197 N.J. 477 (2009). The defendant raised for the first time at sentencing

that approximately eighteen years earlier, his business rented a hot dog cart to the municipal court judge and had not been paid. The judge recalled the hot dog cart but not the defendant and determined he had to recuse himself from sentencing the defendant. After sentencing, defendant was convicted in a trial de novo in the Law Division. We rejected defendant's argument on appeal that he was entitled to a new trial based on the municipal court judge's conflict. Judge Stern stated,

> The issue giving rise to his decision <u>arose after his findings of guilt were rendered</u>. At the municipal court trial, <u>neither defendant nor the judge recalled</u> the hotdog cart incident of approximately eighteen years earlier, and <u>defendant raised no issue with respect thereto before the findings were rendered</u>. In light of these facts, we decline to hold that the findings of the Law Division which we review after a trial de novo are somehow tainted because the record was made before the municipal court judge.
>
> [<u>Ibid.</u> (emphasis added); <u>see also</u> <u>State v. Bisaccia</u>, 319 <u>N.J. Super.</u> 1, 21 (App. Div. 1999).]

Recognizing that the action taken to ensure one litigant's case was heard without the appearance of partiality may come at some cost to the litigant who is unaffected by the conflict, we have encouraged litigants to take appropriate steps to limit expense upon retrial, <u>DeNike</u>, <u>supra</u>, 196 <u>N.J.</u> at 519, and noted that economic sanctions could be imposed upon a litigant whose concealment of disqualifying facts resulted in a wasted

litigation effort by her adversary. Rivers, supra, 346 N.J. Super. at 422-23. However, mindful that our ultimate objective is to maintain public confidence in the judicial process, we cannot ignore the impact upon public confidence if the case of a blameless litigant is effectively eviscerated in the interest of sparing another litigant from a mere appearance of partiality.

That consequence has added resonance when, as here, it was the unconflicted party, the State, that brought the disqualifying facts to light while Collins withheld those facts from the judge for a period of one year while she was appearing before him in other criminal matters for admittedly strategic reasons. Although we agree that her failure to raise the issue earlier should not alone deprive Collins of a remedy, we reject her contention that she had no obligation to bring the disqualifying facts to the court's attention until it suited her strategic purposes. In Rivers, we explicitly stated, "[T]he obligation to disclose the disqualifying involvement rest[s] equally upon each party who had knowledge of the involvement." 346 N.J. Super. at 423. To accept Collins's argument would create the potential for manipulation of the judicial process that would undermine public confidence.

We therefore conclude that under the circumstances of this case, a determination as to whether warrants should be

invalidated, evidence suppressed, and indictments dismissed should not be controlled by a "bright-line rule." Because the remedy sought has the practical effect of applying the exclusionary rule to the evidence obtained here, the facts here call for a consideration of the totality of the circumstances as would apply to challenges to searches and seizures on constitutional grounds. The following non-exclusive list of factors are relevant to our analysis here:

(1) the nature and extent of the judge's prior role as a prosecutor or attorney and the amount of time that passed since the disqualifying conduct;

(2) the facts known to the judge at the time of the judicial act that is challenged;

(3) the reasonableness of efforts made by the State and the judge to identify a conflict before judicial action is taken;

(4) the evidence of actual partiality on the part of the judge, including any evidence that his or her prior role affected the decision made;[15]

(5) the length of delay in raising the issue and any reason for such delay;

---

[15] Cf. Murray v. United States, 487 U.S. 533, 542, 108 S. Ct. 2529, 2536, 101 L. Ed. 2d 472, 484 (1988).

(6) prejudice to the adverse party caused by the delay in raising the disqualification issue;

(7) sufficiency of support for the warrant or order issued by the judge.

No one factor is dispositive but, similar to the analysis in Fourth Amendment challenges to searches and seizures, our analysis is informed by whether the nullification of orders and suppression of evidence will serve the objective of the Code of Judicial Conduct "to maintain public confidence in the integrity of the judiciary." In re Advisory Letter No. 7-11, supra, 213 N.J. at 71.

There is no contention here that, despite his "personal prosecution" of Collins some seven years earlier, the judge was aware of or influenced by the disqualifying facts at the time he issued the warrants here. Because there is also no contention that there was insufficient probable cause to support the issuance of the warrants, we need not describe the supporting evidence in detail. However, by way of example of the sufficiency of the affidavits, we briefly describe the affidavit for the first warrant, which authorized the installation of a tracking device on Collins's automobile. The affidavit contained descriptions of two controlled purchases of cocaine from Presley and Collins during the week of March 11, 2012, and

stated that Collins drove the red Acura registered to her to the prearranged site for the first controlled buy. The affidavit also described information obtained from four different confidential informants (CIs) with prior reliability, three of whom had purchased cocaine from Collins in the past.

Collins was arraigned by the judge on a prior criminal matter in January 2011, well over a year before the first warrant was issued. A suppression motion was filed and not resolved until November 2011. At that time, the judge arraigned Collins on another indictment. Motions were filed in that case as well, and the motion hearing was scheduled for April 2012. It was within the month before the scheduled motion date for the second matter to proceed before the judge that the warrants were issued.

It is unclear from the record exactly how long Collins was aware of the disqualifying facts while her matters were pending before the judge. We appreciate the fact that the contact between a defendant and a prosecutor or appointed counsel, particularly in a high-volume court proceeding such as the days on which multiple defendants enter guilty pleas or are sentenced, may not translate into vivid recollections of the identities of the participants. Although court records regarding such appearances may be helpful as reminders, they may

not reliably and instantly provide complete information about all such proceedings. That was the case here. When the assistant prosecutor alerted the court and defense counsel to the judge's prior prosecution of Collins, only one prosecution was identified, and it was only upon further review that three other indictments were identified.[16]

Collins admits that she knew of the disqualifying facts, elected to withhold them, and claimed she was entitled to do so because she had no responsibility to disclose the facts. But, as we directed in Rivers, supra, the integrity of the process requires that all participants share equally in the responsibility to raise disqualification issues known to them. 346 N.J. Super. at 422-23. By withholding the information here, Collins placed an unsuspecting judge in an untenable position where every judicial act was at risk of nullification. This alone posed a risk to the integrity of the judicial process. We therefore reject Collins's contention that she was entitled to withhold her knowledge of the judge's prior prosecution of her until such time as it served her strategic purposes.

---

[16] As this case demonstrates, neither human memory nor computerized records are infallible in detecting a conflict of the sort that existed here. We suggest that the Criminal Practice Committee consider whether a procedure might be instituted to alert the court and parties of conflicts based on prior representation or prosecution before significant judicial action is undertaken.

If her argument were accepted, Collins's silence would also result in significant prejudice to the State. As we have noted, she appeared before the judge for arraignment on two separate matters and litigated a suppression motion before him, all within the year before the warrants were issued. If she had raised the disqualifying facts at any time during that period, the judge would have recused himself prior to issuing the warrants, and the matter would have proceeded before another judge without any threat to the continued prosecution.

Our analysis of these factors leads us to conclude that a nullification of the judge's orders here would not serve the purpose of the disqualification rules and Code of Judicial Conduct. We do not retreat from the principle that when the prior prosecutions were raised, the judge was required to recuse himself. However, viewing the facts from the perspective of a "fully informed" member of the public, there is little reason to lose confidence in the integrity of the judicial process when it is undisputed that the judge was unaware of the seven-year-old disqualifying facts and acted in an unbiased matter. We are also convinced that the same "fully informed" member of the public would be dismayed by the effect on the integrity of the judicial process if a defendant were permitted to manipulate the outcomes of prosecutions not tainted by constitutional defect by

A-4816-12T2

having the discretion to invoke dispositive claims of judicial disqualification at will.

The order denying defendants' motions is affirmed in all respects.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4816-12T2