**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3663-17T4

D.S.,

    Plaintiff-Appellant,

v.

PASTOR R.L.S., and THE ESTATE
OF PASTOR R.L.S.,

    Defendants,

and

REVEREND J.M.E., ST. THOMAS
LUTHERAN CHURCH, NEW JERSEY
SYNOD, and EVANGELICAL
LUTHERAN CHURCH IN AMERICA,

    Defendants-Respondents.

_____

Argued telephonically May 23, 2019 – Decided June 6, 2019

Before Judges Fisher and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1937-15.

D.S., appellant, argued the cause pro se.

Sean Patrick O'Mahoney argued the cause for respondents New Jersey Synod and Evangelical Lutheran Church in America (Weber Gallagher, attorneys; Joseph Goldberg and Sean Patrick O'Mahoney, on the brief).

Reverend J.M.E., pro se respondent, join in the brief of respondents New Jersey Synod and Evangelical Lutheran Church in America.

Diana Lynne Anderson, attorney for respondent St. Thomas Lutheran Church, join in the brief of respondents New Jersey Synod and Evangelical Lutheran Church in America.

PER CURIAM

Plaintiff D.S. appeals from Law Division orders: (1) enforcing the settlement agreement reached by plaintiff and defendants New Jersey Synod and Evangelical Lutheran Church in America (collectively defendants); (2) denying plaintiff's motion for reconsideration; and (3) denying plaintiff's motion to disqualify the trial judge. We affirm.

I.

This case arose from plaintiff's claim that defendant Pastor R.L.S., an ordained Lutheran minister, sexually abused and molested him about twelve times during 1980-1981, when plaintiff was approximately eleven or twelve years old. Plaintiff is now fifty years old.

Plaintiff retained an attorney to represent him in his claims against defendants.  The retainer agreement provided, in relevant part:

> Medicare:  If you received Medicare payments, you may be responsible for the repayment of the Medicare amount.  The Medicare Secondary payer provisions of the statute 42 U.S.C. 1395y(b)(2), preclude Medicare from paying for a beneficiary's medical expenses when payment "has been made or can reasonably be expected to be made under an automobile or liability insurance policy or plan (including a self-insured plan) or under no-fault insurance."  However, Medicare may pay for a beneficiary's covered medical expenses when the third party payer does not pay promptly,  conditioned on reimbursement to Medicare from proceeds received from a third party liability settlement, award, judgment or recovery.  If it is needed to get authorization for a Medicare lien, set aside and/or dispute the lien amount, the client will be billed separately and hourly for such service at applicable attorney rates.
>
> Liens:  The undersigned hereby agrees to satisfy any and all liens or encumbrances which may apply to any settlement amount which may be received with respect to this matter.  If the client has incurred any unpaid medical treatment and doctor has a Notice of Physician Lien to secure payment of medical bills relating to injury, client understands that it is his/her responsibility to satisfy lien amount out of any settlement proceeds. Attorney is not responsible for payment of any outstanding doctor liens, Social Security liens, Medicare/Medicaid liens, etc.

Plaintiff was thus on notice of his responsibility for any Medicare or medical provider liens.

Plaintiff filed an eleven count, sixty-page personal injury complaint against Pastor R.L.S.; St. Thomas Lutheran Church, the church where Pastor R.L.S. was assigned and plaintiff was a congregant; and defendants. The complaint alleged the following causes of action: sexual battery (count one); assault (count two); battery (count three); delayed discovery – equitable estoppel (count four); intentional infliction of emotional distress (count five); negligent hiring, supervision, and retention (count six); negligent entrustment, breach of fiduciary duty, and respondeat superior (count seven); negligence – condition of land (count eight); general negligence (count nine); sexual abuse (count ten); and false imprisonment (count eleven).

Following completion of substantial discovery and after consulting with his attorney, plaintiff "reluctantly accepted the settlement offer of $70,000 on July 22, 2016" in settlement of all of his claims. Plaintiff signed a "General Agreements of Settlement and Release" (Agreement) in August 2016. Pertinent to this appeal, the Agreement stated:

> 1. RELEASE
>
> It is hereby agreed and settled that RELEASOR, for and in consideration of the sum of SEVENTY THOUSAND DOLLARS ($70,000.00), does hereby remit, release, and forever discharge RELEASEES and all of their employees, agents, insurers, and/or assigns, predecessors, successors, partners, from any and all

4

manner of action(s) and cause(s) of action, suits, debts, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever, in law or in equity, related to the Legal Action described herein, which against the said RELEASEES RELEASOR ever had, now has, or which his heirs, agents, executors, administrators, successors or assigns, or any of them, hereafter can, shall or may have for, or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the present.

2. INDEMNIFICATION AGAINST LIENS, CLAIMS OR DEMANDS

RELEASOR agrees to satisfy any liens, claims or demands submitted against the proceeds of this settlement, including, but not limited, to any lien, claim or demand asserted as a result of the alleged injury injuries, or damages sustained or incurred by RELEASOR arising from, or in any way connected with the Legal Action described herein.

RELEASOR agrees to defend, indemnify and hold harmless the RELEASEES from any claim, demand or suit made in connection with any lien, claim, demand and suit brought by any other entity including, but not limited to, any health care providers, Workers' Compensation insurer/carrier, any person and/or entity seeking compensation and/or reimbursement for services and/or payments provided to RELEASOR arising from, or in any way connected with the Legal Action described herein.

RELEASOR agrees and acknowledges that it is his sole and exclusive obligation to satisfy all liens, conditional payments, debts, rights of subrogation, and/or any other claims or actions asserted against them and/or the proceeds of this settlement, whether now known or

5

unknown, including, but not limited to any liens by any medical provider, or any Workers' Compensation insurer. Medicaid or Medicare resulting from the payment of compensation, expenses from hospital or other care and treatment of RELEASOR arising from, or in any way connected with the Legal Action described herein.

RELEASOR further agrees to release the RELEASEES from any liens, debts, rights of subrogation, and/or any other claims or actions asserted against them and/or the proceeds of this settlement by anyone claiming by, through, or under RELEASOR, whether now known or unknown, including any Workers' Compensation, Medicaid or Medicare liens resulting from the payment of compensation and/or expenses for hospital, medical, mental health and/or other care and treatment of RELEASOR arising from, or in any way connected with the Legal Action described herein.

It is not the purpose of this Agreement to shift responsibility for medical care to the Medicare program. Instead, this Agreement is intended to resolve a dispute between RELEAS[OR] and the RELEASEES in a manner that takes into account the interests of Medicare and that complies with the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A). The parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest in the circumstances presently known.

The Agreement clearly and unambiguously confirmed plaintiff's sole responsibility for any charges or liens asserted by Medicare or medical providers.

When an issue was subsequently raised by plaintiff regarding responsibility for liens asserted by Medicare for treatment or therapy, defendants drafted a revised General Agreement of Settlement and Release (Revised Agreement). The Revised Agreement contained virtually identical language regarding indemnification against liens, claims, or demands, except it added the following additional paragraph:

> RELEASOR and his counsel represent that RELEASOR is a Medicare beneficiary as of the date of this Agreement. RELEASOR and his counsel represent that RELEASOR has not received any Medicare benefits with respect to any injuries in any way connected to the Legal Action. RELEASOR expressly represents and warrants that no conditional payments have been made by Medicare on his behalf with respect to injuries claimed to be as a result of or in any connected to the Legal Action. RELEASOR further warrants that any Medicare, Medicaid, or Workers' Compensation liens, whether now known or unknown, resulting from the payment of compensation or expenses for any medical, hospital, or mental health care and/or treatment of RELEASOR's injuries and/or damages, will be fully satisfied by the RELEASOR from the settlement proceeds or otherwise, which is a material condition of this Agreement.

Defendants stood ready, willing, and able to remit the settlement proceeds upon receipt of the executed Revised Agreement.

Plaintiff refused to sign the Revised Agreement. Instead, he filed an ethics grievance against his former attorney with the District Ethics Committee (DEC).

7

The DEC dismissed the grievance five months later, finding no evidence of unethical conduct. Plaintiff appealed the dismissal to the Disciplinary Review Board (DRB). The DRB dismissed the appeal, also finding no evidence of unethical conduct.

In addition to refusing to execute the Revised Agreement and filing the ethics complaint, plaintiff fired his attorney, and proceeded thereafter without counsel. Plaintiff challenged the validity of the settlement agreement, claiming: (1) his attorney did not provide adequate representation; (2) his attorney and defense counsel colluded to have the settlement enforced; (3) several individuals affiliated with the DEC omitted evidence and delayed an investigation into the alleged collusion; and (4) the DRB improperly dismissed plaintiff's ethics grievances in order to protect the DRB, the DEC, his former attorney, and defense counsel.

Defendants moved to enforce the settlement. The trial court issued an oral decision and order granting the motion. Plaintiff was ordered to execute the revised settlement release that defendant transmitted to plaintiff's attorney on August 31, 2016. Plaintiff did not comply with the order.

Defendants then moved to dismiss the complaint with prejudice based on plaintiff's non-compliance. The court declined to dismiss the complaint,

entering an order that: (1) declared the case was settled for $70,000; (2) directed defendants to deposit a $70,000 settlement draft made payable to plaintiff and his former attorney with the court; (3) directed plaintiff's former attorney to petition the court to recover any unpaid fees and costs prior to issuance of the settlement funds; (4) declared defendants fully discharged and released from plaintiff's claims; and (5) declared defendants were not responsible for any past or future medical expenses or liens, including Medicare or Medicaid, incurred by plaintiff "as subject to the terms of the settlement."

Plaintiff moved for reconsideration and to disqualify the trial judge. The trial court issued oral decisions and orders denying both applications. Plaintiff then sought a stay of the orders pending appeal. The trial court granted the stay but permitted defendants to deposit the settlement draft with the court. This appeal followed.

Plaintiff argues: (1) the trial court ignored evidence, which showed plaintiff's former attorney abandoned him after the initial consultation and failed to make key corrections to the complaint, because it wanted to protect plaintiff's former attorney (not raised below); (2) the settlement agreement incorrectly stated plaintiff was neither a Medicare or Social Security recipient to protect plaintiff's former attorney (not raised below); (3) plaintiff subsequently learned

A-3663-17T4

he would be responsible for reimbursing Medicare for future therapy related to his injuries from the settlement proceeds (not raised below); (4) plaintiff's former attorney colluded with defense counsel to have the settlement agreement enforced; (5) the DEC investigator lied, omitted evidence from and intentionally delayed her investigation (not raised below); (6) the DEC secretary altered plaintiff's attorney ethics grievance to protect plaintiff's former attorney (not raised below); (7) the DEC chair delegated his decisional authority and allowed the investigation to lapse to protect plaintiff's former attorney (not raised below); and (8) the DRB dismissed all grievances against the DEC investigator and representatives to protect the DRB, the DEC, and plaintiff's former attorney (not raised below).

## II.

New Jersey has a "strong public policy in favor of the settlement of litigation." Gere v. Louis, 209 N.J. 486, 500 (2012) (citing Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008); Continental Ins. v. Honeywell, 406 N.J. Super. 156, 195 n.31 (App. Div. 2009)). "A settlement agreement between parties to a lawsuit is a contract." Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Nolan v. Lee Ho, 120 N.J. 465, 470 (1990)). Thus, enforcement of the agreement "is 'governed by [the

general] principles of contract law.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alteration in original) (quoting Brundage, 195 N.J. at 600-01). "Absent compelling circumstances, settlement agreements are enforced by our courts," Borough of Haledon v. Borough of N. Haledon, 358 N.J. Super. 289, 305 (App. Div. 2003) (citing Nolan, 120 N.J. at 472), because "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019) (alteration in original) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)).

"[A]n agreement to resolve a matter will be enforced as long as the agreement addresses the principal terms required to resolve the dispute. The addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC, 421 N.J. Super. 445, 453 (App. Div. 2011), aff'd, 215 N.J. 242 (2013) (citations omitted) (citing Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (Ch. Div. 1987)). "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the

11

settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) (quoting Bistricer, 231 N.J. Super. at 145). "Execution of a release is a mere formality, not essential to the formation of the contract of settlement." Jennings v. Reed, 381 N.J. Super. 217, 229 (App. Div. 2005).

"On a disputed motion to enforce a settlement," a trial court must apply the same standards "as on a motion for summary judgment." Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997).

Applying these guiding principles, we affirm substantially for the reasons expressed by Judge Arnold B. Goldman in his comprehensive and well-reasoned oral decisions. We find insufficient merit in plaintiff's arguments that were not raised before the trial court to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following brief comments.

In contrast to complex contractual and matrimonial disputes that typically require detailed settlement terms, this case involved claims for personal injuries arising from alleged tortious conduct. A simple, generic release of all claims, including responsibility for any related liens by medical providers, in exchange for stated consideration would suffice. The record demonstrates the settlement

agreement reached by the parties contained the necessary terms required to globally settle the dispute. Plaintiff agreed to those terms. He later reneged on signing the revised release, claiming he did not know he may be responsible for Medicare liens arising from treatment that was previously uncharged. The Revised Agreement did not materially alter the terms of the settlement reached. As between the parties, the settlement is enforceable. Plaintiff's remedy, if any, is against his former attorney.

Plaintiff claims the trial judge erred by not recusing himself. A judge "shall be disqualified . . . and shall not sit in any matter . . . when there is any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). Similarly, Canon 3, Rule 3.17(B) of the Code of Judicial Conduct states "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." "However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." State v. Presley, 436 N.J. Super. 440, 448 (App. Div. 2014) (quoting State v. Marshall, 148 N.J. 89, 279 (1997)). Following those principles, the Court adopted "the following standard to evaluate requests for recusal: 'Would a reasonable, fully informed

person have doubts about the judge's impartiality?'" State v. McCabe, 201 N.J. 34, 44 (2010) (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)).

Motions for disqualification "are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." Id. at 45 (citing Panitch v. Panitch, 339 N.J. Super. 63, 66, 71 (App. Div. 2001)). "We review de novo whether the proper legal standard was applied." Ibid. We find no factual or legal basis for recusal. The denial of plaintiff's recusal motion was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3663-17T4